UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
DEBRA GELLER and GREGG GELLER,                    10-CV-170 (ADS) (ETB)

                                     Plaintiffs,

       -against-

NORTH SHORE LONG ISLAND JEWISH HEALTH
SYSTEM and ANTHONY DiFILIPPI,

                                     Defendants.
-------------------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTIONS FOR AN EXTENSION OF DISCOVERY AND TO COMPEL OUTSTANDING DISCOVERY DOCUMENTS AND DEPOSITIONS

Serrins & Associates, LLC
233 Broadway, 18th Fl.
New York, N.Y. 10279
(212) 384-0202

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . .1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

ARGUMENT

POINT I:

AN EXTENSION OF THE DISCOVERY DEADLINE SHOULD BE GRANTED………...8

POINT II:

THE COUR SHOULD COMPEL OUTSTANDING DISCOVERY BECAUSE PRIVILEGE
HAS NOT BEEN PROPERLY ASSERTED……. . . . . . . . . . . . . . . . . . . . . . . .................. 11

    A. Kim Greene and Mark Gloade Should Appear for Deposition………………………13

        1. Kim Greene and Mark Gloade Performed Corporate Compliance and/or
            Human Resources Functions and are Fact Witnesses in this
            Case…………………………….........................................................................14

        2. Defendants Bear the Burden of Proving Privilege…………………………...17

    B. The Court Should Compel the Production of Documents Relating to North Shore's
      Internal Investigation…………………………………………………………...18

        1. North Shore's Internal Investigation Documents Cannot Be Privileged As
            Defendants Claim Reliance On the Information in Support of Its
            Defenses…………………………………………………………………….19

        2. North Shore's Investigation and Remedial Actions Must Be
            Disclosed…………………………………………………………………….23

CONCLUSION…………………………………………………………………….25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Cioffi v. New York Cmty Bank,* 2006 U.S. Dist. LEXIS 92037 (E.D.N.Y. 2006)...................25

*Faragher v. City of Boca Raton,* 118 S.Ct. 2275 (1998)...............................................*passim*

*Granite Partners, L.P. v. Bear Stearns & Co.,* 184 F.R.D. 49 (S.D.N.Y. 1999)...................18

*Harding v. Dana Tramp., Inc.,* 914 F.Supp. 1084 (D.N.J.1996).....................................19

*In re Bonanno,* 344 F.2d 830 (2d Cir. 1965)..............................................................18

*Kolstad v. Am. Dental Assoc.,* 527 U.S. 526 (1999).....................................................24

*Malik v. Carrier Corp,* 202 F.3d 97 (2d Cir. 2000)......................................................15

*Mallinckrodt Chemical Works v. Goldman, Sachs, & Co.,* 58 F.R.D. 348 (S.D.N.Y. 1973)......25

*McGrath v. Nassau County Health Care Corp.,*

2001 U.S. Dist. LEXIS 15891 (E.D.N.Y.2001)(Decision by William D. Wall, U.S.M.J.)..........22

*McGrath v. Nassau County Health Care Corp.,*

204 F.R.D. 240 (E.D.N.Y.2001)(Decision by Thomas C. Platt, U.S.D.J.)..........................23

*McKinney v. Connecticut,* 2011 WL 166199 (D.Conn.2011).........................................9

*Trouble v. The Wet Seal, Inc.,* 179 F.Supp.2d 291 (S.D.N.Y.2001).................................17

*Worthington v. Endee,* 177 F.R.D. 113 (N.D.N.Y. 1998)......................................*passim*


**Rules**

*Fed.R.Civ.P. 26*................................................................................*passim*

*Fed.R.Civ.P 37*......................................................................................1, 11

## PRELIMINARY STATEMENT

Plaintiffs Debra Geller and Gregg Geller respectfully file this Motion pursuant to Fed. R. Civ. P. 37 (a) to compel Defendants North Shore Long Island Jewish Health System ("North Shore") and Anthony DiFilippi to produce documents and deposition testimonies of North Shore employees, Kim Greene and Mark Gloade, regarding information relating to investigations or remedial actions taken by Defendant North Shore in response to Plaintiff Debra Geller's complaints of sexual harassment and retaliation. Plaintiffs respectfully request an extension of discovery in order to complete the document production and witness depositions since all requests for discovery and notices for deposition were served on Defendants in a timely manner. Plaintiffs have conferred in good faith with Defendants on several occasions including through written correspondence, telephone communications, in-person discussions during depositions, and electronic mail communications in attempt to resolve these disputes without success and thus, Plaintiffs are now seeking relief via a motion to compel. Hence, Plaintiffs respectfully request an Order to extend discovery so that Defendants may produce the following:

1) Emails that pertain to North Shore's internal corporate compliance investigation, particularly those sent and received by North Shore's Corporate Compliance Officer, Kim Greene to/from North Shore employees relating to Debra Geller's complaints of sexual harassment and retaliation;

2) Documents bearing Bates numbers 310- 356 relating to Kim Greene's factual notes taken during witness interviews and any other similar notes taken by Ms. Greene;

3) Other documents maintained in the regular course of business by North Shore's Corporate Compliance Department, relating to the investigation of Debra Geller's complaints, including investigation reports listed on Defendants' privilege log;

1

4) Kim E. Greene for deposition; and

5) Mark Gloade for deposition.

## STATEMENT OF FACTS

Plaintiffs filed an action in this Court on January 14, 2010, alleging *inter alia* sexual harassment by Defendant DiFilippi as well retaliation suffered subsequent to Debra Geller's discrimination complaints, which she made internally to North Shore's Corporate Compliance Department in July 2009. *See* Exhibits attached to the Declaration of Ann Macadangdang dated July 22, 2011, Exhibit ("Ex") 1-Complaint,¶1; Ex 2-Deposition Transcript ("Tr.") of Debra Geller,p. 179; Ex 3, Affidavit of Debra Geller ("Geller Aff."), ¶ 5-7. On April 2, 2010, Defendants filed an Answer with Affirmative Defenses, denying the allegations within Plaintiffs' Amended Complaint, filed on March 19, 2010. *See* Ex 4-Amended Complaint; Ex-5-Answer.

The matter proceeded to discovery. On or about May 11, 2010, Defendants served their Rule 26(a) Initial Disclosures listing individuals likely to have discoverable information, along with the subjects of that information, which Defendants contended may be used "to support its claims or defenses." *See* Ex 6-Defendants' Initial Disclosures, p. 2. Defendants indicated that Mark Gloade, Esq. possesses knowledge regarding the "**action taken** by [North Shore] **in response to the complaint by Plaintiff Debra Geller**." (emphasis added) *Id.* Defendants also listed Kim Greene as possessing knowledge relating to "**Plaintiff Debra Geller's complaint** to [North Shore's] Corporate Compliance Department **and its investigation thereof**. (emphasis added) *Id.* at p. 3.

On June 9, 2010, Plaintiffs served their First Request for the Production of Documents, which demanded among other documents, the following:

"2. Documents relating to and/or concerning Plaintiff Debra Geller's employment maintained by

2

Defendant North Shore Long Island Jewish Health System's human resources, personnel, and/or **corporate compliance department**, This includes, but is not limited to, personnel action forms, documents relating to payroll, typed and/or written descriptions of each position held by Plaintiff, and documents relating to changes to Ms. Geller's compensation and benefits.

...

4. Documents including but not limited to, **electronic mail correspondence, notes, drafts, memoranda,** diaries and/or diary entries, meeting minutes and/or notes, and reports about or relating to Plaintiff Debra Geller, which the following individuals generated or created:
   a. **Anthony DiFillipi**
   b. **Sandra Lembck;**
   c. Dahlys Oetting;
   d. Susan Bardolf; and
   e. **Kim Greene.**

...

9. Provide copies of all documents, including but not limited to **emails, letters, memoranda, hand or typewritten notes, pertaining to Plaintiff Debra Geller's verbal complaints against Anthony DiFillipi**.

11. Provide all documents relating to inquiries and/or **investigations conducted by DefendantNorth Shore** regarding Anthony DiFillipi, which Plaintiff Debra Geller communicated to Dahlys Oetting and/or Kim Greene." (emphasis added)

*See* Ex.7- Excerpts from Plaintiffs' First Request for the Production of Documents.

Defendants withheld documents responsive to these requests claiming objections including privilege, which Plaintiffs dispute. In July 2009 and before Debra or Gregg Geller retained counsel, Debra Geller made an internal complaint of discrimination wherein she informed North Shore of allegations of sexual harassing conduct by her supervisor, Defendant Anthony DiFilippi. *See* Ex 3- Geller Aff,¶5. Kim Greene, Defendant North Shore's Corporate Compliance Officer, began an investigation into Plaintiff Debra Geller's allegations. *Id.* At the conclusion of Ms. Greene's internal investigation, Debra Geller was informed that the results of North Shore's internal investigation would be disclosed. *See* Ex 11- Greene's 1/13/2010 email. Ms. Greene's assurance was made prior to the filing of Plaintiffs' Federal Court Complaint on January 14, 2010. Contrary to Ms. Greene's assertion on January 13, 2010, North Shore never

3

disclosed its investigation findings. Much of the factual portions of Ms. Greene's investigation have been withheld by Defendants during the discovery stage, despite Plaintiffs' timely served demands for production. Defendants' Privilege Log dated July 15, 2010, referred to documents, which related to Kim Greene's investigation into Debra Geller's internal complaints of discrimination, including Greene's undated Report, report dated October 28, 2009, draft report dated October 16, 2009, and undated chronology. *See* Ex 8-Defendants Privilege Log, p. 2-3. These documents, along with additional items that were not identified in Defendants Privilege Log, have been withheld by Defendants. For example, Kim Greene's hand written notes of witness interviews and any emails between Greene and witnesses interviewed during North Shore's investigation into Debra Geller's internal discrimination complaint are relevant and responsive to Plaintiff's discovery requests, but have not been produced.

Although Ms. Greene began her internal investigation into Debra Geller's complaints of discrimination and retaliation pursuant to Ms. Greene's responsibilities as a Corporate Compliance Officer and prior to any party's retention of outside counsel in this matter, Defendants asserted Attorney-Client and Work Product privileges to any document relating to North Shore's internal investigation that was generated after August 18, 2009. *See* Ex 3-Geller Aff., ¶ 6. The August 18, 2009 date is the day that Plaintiffs' counsel sent North Shore a demand letter informing them of Debra Geller's discrimination claims. *See* Ex 9-Demand Letter.

Defendants failed to establish when outside counsel, Epstein, Becker, and Green, P.C. was retained and have neglected to explain how the nature of the investigation by Ms. Greene (a North Shore employee) changed subsequent to the August 18, 2009 date. Rather, Defendants claimed a blanket entitlement to privilege to all documents including factual portions of Ms. Greene's investigatory notes, witness interviews, and the investigation results. It is important to

4

note that Plaintiffs have never requested any document relating to outside counsel (Epstein Becker and Green, P.C. or Traycee Klein, Esq.) and through various times throughout the litigation, Defendants have conceded that portions of Kim Greene's investigation are readily discoverable. By way of illustration, it is conceded that Kim Greene, who is an attorney, undertook the investigation into Debra Geller's discrimination complaints pursuant to her role as a Corporate Compliance Officer and not as a lawyer. This is evident by Defendants' production of Kim Greene's documents, including notes taken prior to August 18, 2009, during witness interviews. *See* Ex 10- Pre-August 18, 2009 Investigation Documents, Bates No. 284-309. Specifically, Defendants do not assert privilege to Greene's factual notes taken prior to August 18, 2009 and produced Greene's factual notes dated July 28, 2009 during Greene's interview of witness Debra Geller, factual notes dated July 29, 2009 during Greene's interview of witness Leanne Sierra (co-worker), factual notes dated July 31, 2009, August 11, 2009, August 13, 2009, during Greene's interviews of witness Denise Chase (co-worker) and factual notes dated July 31, 2009 during Greene's interview of Jamie Cohen (co-worker). However, all notes of interviews conducted after August 18, 2009, have been withheld.

In addition, North Shore (as the client of Epstein Becker and Green, P.C.) did not believe that the results of Kim Greene's investigation constituted privileged information, even though the investigation was completed after the August 18, 2009 date. By email dated January 13, 2010, Kim Greene emailed Debra Geller stating that "The investigation into your complaints has been completed and you will be directly informed of the outcome in 2-3 weeks." *See* Ex 3- Greene's 1/13/10 email to Geller. Hence, a North Shore employee (Greene) the holder of privilege communicated to Debra Geller directly that the investigation results constituted information to which she was entitled. Despite the fact that aspects of North Shore's internal

5

investigation are legitimately discoverable, outside counsel, Epstein Becker and Green, P.C., have not disclosed the investigation results or factual notes of Greene's interviews of other witnesses if conducted after August 18, 2009.

Discoverable documents never produced by Defendants include, but are not limited to the interviews that Greene took of individuals listed in Defendants' Initial Disclosures such as Defendant Anthony DiFilippi (alleged sexual harasser), Sandra Lembck von Hassel (Debra' supervisor), and Susan Bardolf (DiFilippi's supervisor). *See* Ex 6-Defendants' Initial Disclosures. Moreover, Defendants refused to produce Kim Greene for deposition, despite being served with a notice of deposition on July 16, 2010. *See* Ex 17- Notice of Kim Greene's deposition. Defendants also failed to produce Mark Gloade for deposition, the North Shore employee who, upon information and belief, made the decision to terminate Defendant DiFilippi's employment at North Shore because he is an attorney. *See* Ex 18- Notice of Mark Gloade's deposition. Plaintiffs informed Defendants that the reasons why Defendant DiFilippi's employment was terminated are not privileged and are directly related to issues in this litigation, including Defendant North Shore's actions taken in response to Debra Geller's complaint.

Throughout the discovery process the parties attempted to resolve this privilege dispute. Specifically, Defendants claimed that documents bearing Bates numbers D 310-356, were privileged and inadvertently produced. However, such documents were not specifically identified on Defendants' privilege log. Once Plaintiffs' counsel directed defense counsel to authority wherein a Court's rejected a party's claim of privilege relating to investigator notes, where the party asserting privilege failed to meet its burden that such witness interview notes were prepared at the direction of counsel, defense counsel changed its posture and conceded to

6

withdraw the privilege claim to factual portions of North Shore's internal investigation. Plaintiffs' counsel repeatedly relied on defense counsels' following representations:

- Defendants expressed their intent to withdraw objections to allegedly privileged documents bearing Bates numbers D 310-356. *See* Ex 12- Letter dated August 13, 2010 by Erin Carney D'Angelo claiming privilege to documents bearing Bates No. D310-356; Ex 13- Letter dated August 18, 2010 by Ann Macadangdang objecting to the privilege designation; Ex14- D'Angelo Letter dated September 14, 2010- offering to "withdraw [Defendants'] claim of privilege over the documents Bates numbered D310-356"; and Ex.15- Macadangdang letter dated September 16, 2010 clarifying that "Plaintiffs are not interested in seeking discovery of documents appropriately designated privileged" and accepting offer to supply "additional discovery that Defendants are now willing to be produce,".

- Defendants indicated they would furnish additional documents aside from the documents bearing Bates numbers D310-356, which relate to the factual portions of North Shore's internal investigation prior to the production of defense witnesses for deposition. *See* Ex16- Emails dated February 28, 2011 to March 2, 2011 between Alan Serrins and Erin Carney D'Angelo, indicating production of additional "documents promptly" and prior to defense witnesses' depositions.

  And

- Defendants stated their intent to produce relevant witnesses for deposition. Specifically, Plaintiffs served the notice of deposition for Kim Greene, North Shore's internal investigator, on July 16, 2010. Plaintiffs also served the notice of deposition for Mark Gloade. *See* Ex17-18.

The discovery and witnesses for depositions were never produced despite diligent attempts to resolve the matter without Court intervention. When it appeared that Defendants' noncompliance with their discovery obligations would not be cured prior to the March 30, 2011 discovery deadline, Plaintiffs applied to the Court for an extension of discovery and an order to compel. *See* Ex 21-March 11, 2011 Letter to Magistrate Judge Boyle requesting court intervention and citing authority to compel investigation documents improperly withheld by Defendants; Ex. 22- March 25, 2011 Letter to Magistrate Judge Boyle requesting an extension of discovery. Such requests were terminated upon this Court's April 8, 2011 Order, which was later vacated, following Plaintiffs' appeal to the Honorable Arthur D. Spatt, pursuant to Rule Fed. R. Civ. P. 72(a). The parties appeared for a conference before the Honorable E. Thomas Boyle on July 7, 2011, wherein the Court ordered that Plaintiffs' motions to compel and extend discovery shall be fully briefed and considered *de novo*.

**ARGUMENT**
**POINT I:**
**AN EXTENSION OF THE DISCOVERY DEADLINE SHOULD BE GRANTED**

Defendants are not in compliance with their discovery obligations. As early as June 9, 2010, Plaintiffs demanded the production of documents relating to North Shore's investigation into Debra Geller's complaints against Defendant DiFilippi. Specifically, Plaintiffs demanded that North Shore produce documents including notes, emails, reports, drafts, and other business documents that related to Plaintiff Debra Geller and maintained by North Shore's Corporate Compliance Department. *See* Ex 7-First Request for Production, ¶2, 4, 8, 9, 11. Plaintiffs further contend that they should be permitted to complete defense witnesses' depositions (Kim Greene and Mark Gloade) as notices for their depositions were served sufficiently in advance of the discovery completion date. Plaintiffs noticed the depositions of Kim Greene and Mark

Gloade, on July 16, 2010 and February 28, 2011. *See* Ex 17, Ex 18. Though Ms. Greene's notice was served eight months in advance and Mr. Gloade's notice was served a month in advance of the end-date of discovery, Defendants failed to confirm dates for either deposition. Both parties timely notified the Court of their request to brief this issue, but the matter was not scheduled to be discussed until after the close of discovery. Plaintiffs now seek an Order to extend discovery so that Defendants will comply with Plaintiffs' relevant and timely served discovery demands. Should the Court grant Plaintiffs the relief they seek, Plaintiffs request that the outstanding discovery documents be produced in advance of depositions.

It is undisputed that the discovery demanded is relevant to the issues in this litigation. Defendants identified both Kim Greene and Mark Gloade as individuals having discoverable information, which Defendants contended may be used "to support its claims or defenses." *See* Ex 6-Defendants' Initial Disclosures, p. 2. In their initial disclosures, Defendants indicated that Mark Gloade, Esq. possessed knowledge relating to North Shore's actions "in response to the complaint by Plaintiff Debra Geller." *Id.* Defendants further indicated that Kim Greene possessed knowledge relating to the investigation conducted by North Shore's Corporate Compliance department into Debra Geller's internal complaint of sexual harassment and retaliation. *See Id.* at p. 3. Hence, Defendants' own assertions demonstrate that Plaintiffs' discovery demands are relevant to the issues of this litigation.

Plaintiffs' discovery demands were served well in advance of the discovery completion date and therefore, timely. Plaintiffs' request for an extension of the discovery deadline is not unreasonable in light of the fact that Defendants are nevertheless required to produce the discovery that Plaintiffs demanded in a timely fashion even after discovery closes. *See Fed.R.Civ.P.26(e); see also McKinney v. Connecticut,* 2011 WL 166199, *2 (D.Conn.

9

2011)("fact that discovery has closed has no bearing on [d]efendant's duty to supplement under Rule 26(e).") Moreover, Plaintiffs reasonably relied on Defendants' assurances that the demanded discovery would be produced. For example, Defendants expressed an intention to produce Kim Greene for deposition as well as factual portions of North Shore's internal investigation into Debra Geller's complaints of sexual harassment and retaliation.

In a letter dated September 14, 2010, defense counsel Erin Carney D'Angelo communicated that Defendants "will produce the documents reflecting the substance of the information provided by witnesses (i.e. witness interview notes), as well as business documents (maintained in the ordinary course of business) used by Ms. Greene in her interviews with the witnesses," will "withdraw [their] claim to privilege over the documents Bates numbered D310-356." *See* Ex.14- D'Angelo's 9/14/2010 letter. In response to this letter, Plaintiffs assured Defendants that "Plaintiffs are not interested in seeking discovery of documents appropriately designated as privileged," and agreed to accept the "additional discovery that Defendants are now willing to produce." *See* Ex.15- Macadangdang's 9/16/2010 letter. Defendants never produced any additional documents.

Despite Defendants' noncompliance with Plaintiffs' discovery demands, Plaintiffs' counsel continuously attempted to confirm Kim Geene's deposition prior to the close of discovery. In an email dated February 25, 2011, defense counsel responded to Plaintiff's request for a date to conduct Ms. Greene's deposition by stating "With respect to Ms. Greene, please propose dates and we will consult with our client." *See* Ex19-D'Angelo's 2/25/2011 email. Similarly, on March 1, 2011, Ms. D'Angelo wrote to Plaintiffs' counsel stating that Epstein, Becker & Green, P.C. was "still waiting to hear about the availability" of Mr. Gloade. *See* Ex 20 - D'Angelo's 3/2/2011 email. In an email dated February 28, 2011, Alan Serrins wrote to

defense counsel to follow-up on a telephone conversation, where counsels agreed that Defendants would "provide the investigation documents that are at issue, in light of the understanding that this production will not waive Defendants' right to assert privilege with regard to documents not produced." *See* Ex 16- Serrins 2/28/2011 email. As demonstrated by the correspondence exchanged, Plaintiffs' counsel repeatedly tried to explain that Plaintiffs' discovery demands did not relate to legal advice or communications by North Shore's outside counsel, Epstein, Becker, & Green, P.C. Regardless of these assurances, Defendants recanted on their prior assertions that they would produce discovery by North Shore's employees Kim Greene and Mark Gloade. Close to the date that discovery was set to close, Defendants re-asserted their conclusory claims of attorney-client and work product privilege and withheld the outstanding relevant discovery.

In light of the fact that Plaintiffs' counsel negotiated in good faith to resolve the instant discovery dispute in lieu of court intervention, a brief extension of the discovery deadline is warranted to enable Defendants to finally produce the outstanding discovery documents and relevant witnesses, Kim Greene and Mark Gloade, for deposition.

**POINT II:**
**THE COURT SHOULD COMPEL OUTSTANDING DISCOVERY BECAUSE**
**PRIVILEGE HAS NOT BEEN PROPERLY ASSERTED**

At issue is whether Plaintiffs are entitled to relief under Fed. R. Civ. P. 37(a)(3)a. Plaintiffs document requests and notices for deposition meet the requirements of Fed. R. Civ. P 26(b)(1), which states "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." This Court should order Defendants to comply with outstanding demands for production and compel the depositions of Kim Greene and Mark Gloade because the documents and testimonies of these individuals will establish that

Defendants' discriminated against Plaintiff Debra Geller on the basis of sex and failed to prevent further discrimination and retaliation against Debra Geller following her internal discrimination complaints to North Shore's Corporate Compliance Department.

Defendants' failure to produce Kim Greene and Mark Gloade for deposition is based on privilege assertions since both of these North Shore employees happen to also be attorneys. However, on their Rule 26(a) Initial Disclosures, Defendants only identified two individuals who have discoverable knowledge regarding the actions taken by North Shore in response to Debra Geller's complaint and its investigation thereof--Kim Greene and Mark Gloade. *See* Ex-6. Based on the evidence adduced thus far, neither Greene nor Gloade were acting in a legal capacity when each responded to Debra Geller's discrimination complaints. Defendants selective disclosure of Kim Greene's factual notes from witness interviews prepared prior to August 18, 2009, undermines Defendants' position that Ms. Greene cannot be produced for deposition because her testimony would reveal privileged information. *See* Ex10-Bates No. 284-309. In fact, Kim Greene informed Debra Geller during the pendency of discovery, that North Shore's investigation results would be shared with Ms. Geller. *See* Ex.11- Greene 1/13/10 email to Geller. However, defense counsel now claims privilege to North Shore's investigation findings. Defendants are currently preventing Plaintiffs from conducting discovery regarding vital information relating to Defendants' efforts to investigate and/or effectuate prompt and remedial action in response to Debra Geller's discrimination complaints. Such evidence is critical to the issues of Defendants' liability in this case, as well as the punitive damages sought by Plaintiffs. As such Defendants are not in compliance with their discovery obligations.

For the reasons asserted below, Plaintiffs respectfully request that the Court order full discovery on these issues, including, but not limited to: the depositions of Kim Greene and Mark

Gloade and the production of documents relating to the factual portions of the investigation conducted by North Shore's Corporate Compliance Department into Debra Geller's complaints.

## A. Kim Greene and Mark Gloade Should Appear for Deposition

It is clear from evidence exchanged that the internal investigation began in or around July 2009, prior to Plaintiffs' retention of counsel and prior to the August 18, 2009 date on Plaintiffs' counsel's demand letter. *See* Ex 10-Bates No. 284-309; Ex 9-Demand Letter. It is also apparent based on Kim Greene's email to Debra Geller that North Shore's Corporate Compliance Department completed its internal investigation into her discrimination complaint by January 13, 2010, prior to the filing of the Federal Complaint in this action on January 14, 2010. *See* Ex 11-Greene's 1/13/10 email, Ex 1- Complaint. North Shore relied on the investigation by Kim Greene and the recommendations by Mark Gloade in determining a "reasonable" response to Plaintiff Geller's internal complaint of discrimination. North Shore delegated its responsibility of taking corrective measures, following Debra Geller's discrimination allegations against Defendant DiFilippi, to its Corporate Compliance Officer, Kim Greene. *See* Ex 3-Geller Aff, ¶6. Based on conversations with defense counsel and discovery exchanged, it is believed that Mr. Gloade recommended the termination of employment of the alleged harasser, Defendant DiFilippi. Nothing in evidence suggests that North Shore's internal investigation was conducted under the direction of outside counsel, Epstein, Becker and Green, P.C. and therefore, Defendants cannot meet its burden of proving that the outstanding discovery and depositions are privileged. Accordingly, the defense witnesses (Greene and Gloade), who have been previously noticed, should appear for deposition. In addition, the documents relating to the internal investigation should be promptly produced in advance of the deposition dates.

13

### 1. Kim Greene and Mark Gloade Performed Corporate Compliance and/or Human Resources Functions and are Fact Witnesses in this Case

Though licensed attorneys, evidence conclusively establishes that Kim Greene and Mark Gloade are North Shore employees who perform corporate compliance and human resources functions. At the deposition of one defense witness, Sandra Lembck, on March 28, 2011, Plaintiffs ascertained that Ms. Lembck supervised Debra Geller, that Kim Greene interviewed Ms. Lembck pursuant to the investigation Ms. Greene was conducting in response to Debra Geller's complaints, and that Ms. Greene was performing the investigation pursuant to her duties as a Corporate Compliance employee at North Shore, rather than as an attorney. Specifically, Ms. Lembck testified as follows:

> Q: Were you interviewed by Kim Green
> A: Yes, I was.
>
> ...
>
> Q: Where was the interview?
> A: I believe it was Kim's office...
>
> ...
>
> Q: Who did you know Kim Green to be when you were interviewed?
> A: She introduced herself as part of corporate compliance.
> Q: Was anyone else present when you were being interviewed?
> A: No.
> Q: Did she take notes?
> A: Yes.
>
> ...
>
> Q: Other than telling you she was from corporate compliance, did she tell you what her title or position was?
> A: She might have. I don't recall.
> Q: Did she tell you that she was acting in any legal capacity?
> A: I don't believe so.

*See* Ex 23- Lembck Tr., p. 198-200.

The above testimony undermines Defendants' assertion of privilege since it was clear that Ms. Greene's role at North Shore was to investigate complaints by employees rather than to act as legal advisor. The information that Kim Greene gathered is crucial to ascertaining the

legitimacy of Defendants' fifth asserted affirmative defense that "Defendants' actions towards

Plaintiff Debra Geller were taken in good faith, for legitimate, non-discriminatory business

reasons." *See* Ex 5- Answer, ¶ 73. The fact that Ms. Greene merely took notes during Ms.

Lembck's interview, that Ms. Lembck was not aware that Ms. Greene was acting in a legal role,

and that no other outside counsel from Epstein, Becker, and Green, P.C. was present at this

witness interview negates a contention that the interview was at the direction of outside counsel

or any other attorneys. This evidence supports Plaintiffs' belief that Ms. Greene's role pertained

to the internal investigation that employers are required to conduct pursuant to federal law,

which would render the <u>entire</u> investigation discoverable. *See Malik v. Carrier Corp.*, 202 F.3d

97, 105 (2d Cir. 2000)(stating that "an employer's investigation of a sexual harassment

complaint is not a gratuitous or optional undertaking; under federal law, an employer's failure to

investigate may allow a jury to impose liability on the employer.") *See also Faragher v. City of

Boca Raton,* 118 S.Ct. 2275, 2292-93 (1998). Despite the discoverable nature of North Shore's

investigation, Ms. Greene's factual notes regarding Ms. Lembck's interview have been withheld.

Ms. Greene's deposition in this matter is essential since there is no other source for the

details of North Shore's investigation, the scope, and its findings. When Plaintiffs' counsel

deposed North Shore's Corporate Director for Human Resources, Dahlys Oetting on March 29,

2011, it became apparent that deposing Ms. Greene was the only way to find out the outcome of

North Shore's internal investigation. Ms. Oetting testified that when she was interviewed by

Kim Greene, Ms. Greene "didn't use the word Complaint. She came to investigate." *See* Ex 24,

Oetting Tr., p. 49. Moreover, Ms. Oetting further testified that Ms. Greene "was asking

questions about Anthony DiFilippi," that she "never" had the opportunity to read any report of

investigation that Kim Green conducted, and that no one else was present during her corporate

15

compliance interview. *Id* at p. 52. Hence, Ms. Oetting's testimony supports the inference that Kim Greene acted pursuant to her corporate compliance functions to investigate Debra Geller's discrimination allegations against Defendant DiFilippi. Additionally, Ms. Oetting never learned the results of North Shore's investigation, so it is imperative for Plaintiffs' counsel to depose Ms. Greene directly in order to ascertain the investigation's outcome. Defendants should also be compelled to disclose the factual portions of Ms. Greene's investigation, including her notes taken during Ms. Oetting's witness interview.

Though an attorney, evidence suggests that Mark Gloade, a North Shore employee also performed similar human resources function outside of his legal capacity. By way of illustration, at the deposition of defense witness, Susan Shevlin on March 29, 2011, Ms. Shevlin testified that Mark Gloade undertook the responsibility for training employees in the area of Equal Employment Opportunity ("EEO") in 2010. *See* Ex 28- Shevlin Tr., p. 42-43. In addition to ascertaining the reasons why Defendant DiFilippi's employment at North Shore was terminated, Plaintiffs are entitled to discover whether the EEO training conducted by Gloade in 2010 was in response to the discrimination complaints that Debra Geller communicated to North Shore. It is likely that such a remedial measure was one of the actions North Shore took in response to Debra Geller's allegations of a hostile work environment based on sex, particularly since Debra Geller testified at her deposition on March 17, 2011 that she never participated in sexual harassment training. *See* Ex 2- Geller Tr., p. 137. Whether Mr. Gloade believed that the department in which Debra Geller worked was in need of EEO training in 2010, <u>after</u> Debra Geller complained of discrimination, impacts the success of Defendants' Ninth Affirmative Defense that "At all material times, Defendants acted lawfully and in good faith and without any intent to deny Plaintiffs any rights under federal, state, or local laws, rules, or regulations." *See* Ex 5- Answer,

¶ 77. Hence, the Court should compel the deposition of Mark Gloade so that Plaintiffs can discover evidence related to North Shore's response to Debra Geller's complaints of sexual harassment and retaliation.

Finally, Defendants contend in their Initial Disclosures that Ms. Greene and Mr. Gloade possess information, which Defendants may "use to support its claims or defenses," which may include their participation in a trial on this case. *See* Ex 6- Defendants' Initial Disclosures, p. 2. Plaintiffs are entitled to question Greene and Gloade prior to trial in order to assess the reasonableness of North Shore's actions, which is central to this litigation. *See Trouble v. The Wet Seal, Inc.,* 179 F. Supp.2d, 291,304(S.D.N.Y.2001) ("'When a party intends to rely at trial on the advice of counsel as a defense…, that advice becomes a factual issue, and 'opposing counsel is entitled to know not only whether such an opinion was obtained but also its content and what conduct it advised.'")).

Since the above evidence undermines Defendants' conclusory claims of privilege, the Court should order that Defendants produce Kim Greene and Mark Gloade for deposition.

## 2. Defendants Bear the Burden of Proving Privilege

Plaintiffs' counsels' previously relied on Defendants' repeated assurances that key witnesses Kim Greene and Mark Gloade would be produced for deposition, thus, obviating the need to file this motion to compel. *See* Ex19-20, Emails exchanged between the parties pertaining to the scheduling of Greene and Gloade's deposition. Instead, Defendants ceased any further attempts to resolve discovery disputes and reverted back to a conclusory claim that Greene and Gloade should not be produced on the basis of privilege. However, Defendants never provided the basis or scope for asserting privilege with regard to these depositions. The party asserting attorney-client privilege has the burden of proving that the information at issue is,

in fact, privileged. *See In re Bonanno,* 344 F.2d 830, 833 (2d Cir. 1965). *See also Granite Partners, L.P. v. Bear, Stearns & Co.,* 184 F.R.D. 49, 54 (S.D.N.Y. 1999)("the work product privilege is waived when a party to a lawsuit uses it in an unfair way that is inconsistent with the principles underlying the doctrine of privilege.") Thus, Defendants must provide a clear position as to what communication or information of either Kim Greene or Mark Gloade warrants privilege protection and why. Defendants have been inconsistent in their assertions of privilege, first in claiming information is privileged, then withdrawing claims of privilege, only to re-assert the privilege designations again. Their position is utterly devoid of any support that the information regarding Defendants' remedial measures and investigation in response to Debra Geller's complaint of discrimination was prepared at the direction of outside counsel, Epstein, Becker and Green, P.C. Thus, Defendants cannot meet their burden in proving that any discovery sought by Plaintiffs are protected by an attorney-client or work product privilege.

## B. The Court Should Compel the Production of Documents Relating to North Shore's Internal Investigation

Early in this discovery dispute, Plaintiffs' counsel directed Defendants to the federal authority of *Worthington v. Endee,* 117 F.R.D. 113, 118 (N.D.N.Y. 1998), where a court compelled the disclosure of the complete report and notes of the investigation by Kim E. Greene, Esq., which was conducted after the receipt of the plaintiff's notice of claim and after the retention of defense counsel. *See* Ex 15- Macadangdang 9/16/10 letter. Plaintiffs believe that the investigator named Kim E. Greene in the *Worthington* case, is the same North Shore employee, whose investigation report and notes have been withheld by Defendants. In *Worthington,* the plaintiff sought the production of defendant's report of its investigation into plaintiff's allegations of sexual harassment and misconduct asserted. *Id.* at 117. The court found

that the "advice that the defendants received via the entire report, including the notes of the investigation, are relevant in determining what corrective actions, if any, were taken, and whether they were sufficient to placate plaintiff's allegations of a hostile work environment." *Id.* at 118, n.5. Similarly, this Court should order the complete disclosure of North Shore's internal investigation in this case because like the defendants in *Worthington,* the Defendants here have implicitly waived the protections customarily afforded privileged communications since, as set forth below, the requested information is at issue in this litigation.

1. **North Shore's Internal Investigation Documents Cannot Be Privileged As Defendants Claim Reliance On The Information In Support of Its Defenses**

It is undisputed that Kim Greene conducted an internal investigation following Plaintiff Debra Geller's internal complaint of sexual harassment and retaliation in July 2009. It is further undisputed that following an internal complaint of discrimination, an employer has the duty to exercise "reasonable care" in correcting and preventing any alleged discriminatory behavior. *Faragher,* 118 S.Ct. at 2293. Moreover, in their Initial Disclosures, Defendants admit that "Documents concerning complaints made by Plaintiff Debra Geller to [North Shore's] Human Resources and Corporate Compliance Departments," may be used to support their asserted defenses. *See* Ex 6-Defendants' Initial Disclosures, ¶B(6), p. 4. "Consistent with the doctrine of fairness, the plaintiffs must be permitted to probe the substance of [the] alleged investigation to determine its sufficiency. Without having evidence of the actual content of the investigation, neither the plaintiffs nor the fact-finder at trial can discern its adequacy." *Harding v. Dana Tramp., Inc.,* 914 F. Supp. 1084, 1096 (D.N.J. 1996). Defendants' claim of privilege to all investigation documents dated after August 18, 2009 has no basis in law.

It appeared throughout various times that Defendants were withdrawing the baseless claims of privilege to the factual portions of North Shore's investigation, including those documents which are Bates numbered D310-356. In an August 13, 2010 letter, Defendants sought the return of documents bearing Bates numbers D310-356, allegedly produced inadvertently. *See* Ex.12-D'Angelo's 8/13/10 letter. Plaintiffs' counsel promptly objected to Defendants' privilege designation. *See* Ex.13- Macadangdang's 8/18/11 letter. In response to Plaintiffs' objection, Defendants wrote to Plaintiffs' counsel on September 14, 2010, <u>after</u> Defendants sought the return of allegedly privileged documents Bates numbered D310-356, and communicated that Defendants "would withdraw our claim to privilege over the documents Bates numbered D310-356." *See* Ex. 14- D'Angelo's 9/14/10 letter. Defense counsels' precondition to permit Plaintiffs to keep the documents Bates numbered D310-356, was to communicate the understanding that Defendants' production of these non-privileged documents would not constitute a waiver of privilege with regard to other information such as communications between North Shore and outside counsel. *See* Ex 14- D'Angelo's 9/14/10 letter. Defendants even indicated that they would produce additional documents "reflecting the substance of the information provided by witnesses interviewed ….so long as Plaintiffs will agree that the production of these documents does not waive the privilege over the attorney-client communications concerning the investigation (including those communications between Ms. Klein and Ms. Greene…" *See* Ex 14- D'Angelo's 9/14/10 letter. It should be noted that Plaintiffs have never demanded or requested any document relating to communications between Defendants and outside counsel (Epstein, Becker, & Green, P.C.) The outstanding discovery solely relate to depositions and documents related to North Shore employees.

Plaintiffs first clarified its position in a letter response dated September 16, 2010, wherein Plaintiffs' counsel reassured Defendants that Plaintiffs would not seek any the discovery of any "documents appropriately designated privilege," which included attorney client communications and even privileged documents not relating to North Shore's internal investigation. *See* Ex 15-Macadangdang's 9/16/10 letter. However, Plaintiffs made clear that they needed to preserve their right, if need be, to challenge a privilege designation, but were willing to accept the "additional discovery that Defendants are now willing to produce," *See* Ex. 15-Macadangdang's 9/16/10 letter. Despite the parties' mutual retention of their rights with regard to privilege, no additional discovery regarding North Shore's internal investigations and remedial actions in response to Debra Geller's complaints of discrimination was ever produced. Plaintiffs continued to reassure defense counsel that the production of the non-privileged internal investigation documents conducted by North Shore would not affect Defendants' rights to assert privilege to properly-designated privileged communications, such as those between North Shore and outside counsel. *See* Ex. 8- Alan Serrins email dated 2/28/11. Again, Plaintiffs were never interested and never sought discovery of communications by Traycee Klein, Esq. or any other attorney Epstein, Becker and Green, P.C. After the close of discovery, no additional investigation documents or witnesses were produced and documents bearing Bates numbers B 310 -356 were returned to defense counsel. Plaintiffs adamantly dispute the privilege designation to these documents and rely on applicable authority as well as Defendants' own actions (i.e. Kim Greene's 1/13/10 email and correspondence by defense counsel indicating a willingness to voluntarily disclose the factual portions of the internal investigation.) *See* Ex 11, 14.

Defendants' failure to provide investigation documents previously demanded is erroneous. *See Worthington,* 177 F.R.D. at 118 (N.D.N.Y. 1998)(in cases claiming sex

discrimination violations under Title VII, "discovery of the [employer's] <u>entire</u> report and notes from the investigation are relevant to and necessary with respect to plaintiff's claim that she was subjected to a hostile work environment."(emphasis added)) This Court should order the re-production of documents Bates numbered B 310-365 along with additional documents created by Kim Greene because as the District Court in *Worthington* noted, "[w]ithout allowing discovery of the entire report and the notes from the investigation, the defendants' protections under the attorney/client privilege and the work product doctrine are simultaneously used as a shield and a sword." Defendants are actively using the investigation documents in defense of Plaintiffs' claims of discrimination and retaliation, yet under a conclusory claim of privilege as defined by defense counsel, Defendants have prevented Plaintiffs from assessing the same evidence. Such is not an appropriately designated claim of privilege, but a defiant act of discovery non-compliance.

Unlike the Defendants who have refused to apply the rationale articulated in *Worthington*, Magistrate Judge William D. Wall, in this district, relied on the *Worthington* case when faced with strikingly similar set of circumstances in *McGrath v. Nassau County Health Care Corp.,* 2001 U.S. Dist. LEXIS 15891, *6 (E.D.N.Y. 2001)("Where ,...an employer defends itself 'by relying upon the reasonableness of its response to the victim's allegations, the adequacy of the employer's investigation becomes critical to the issue of liability. The only way that Plaintiff, or the finder of fact, can determine the reasonableness of [the employer's] investigation is through full disclosure of the contents thereof.") In *McGrath,* Magistrate Judge Wall compelled the production of an employer's internal investigation report and notes within ten days of his decision. Magistrate Judge Wall further noted that "the issue of whether the investigation was commenced the day before the EEOC charge or the day after the EEOC charge is not

determinative. The issue here is whether corrective actions were taken by [the employer] were reasonable in light of what it learned from the investigation." *Id.* Similarly, this Court should order full disclosure of North Shore's internal investigation regardless of when Plaintiffs' demand letter was sent since such an arbitrary date is not determinative of whether the investigation is discoverable. On appeal, District Judge Thomas C. Platt, affirmed Magistrate Judge Wall's decision to compel discovery in *McGrath,* holding that neither the attorney-client nor the work product doctrine applied since the reasonableness of the employer's investigation was an issue in the case, stating that the assertions of privilege would be "highly prejudicial to McGrath and misleading to the Court." *McGrath,* 204 F.R.D. 240, 246 (E.D.N.Y. 2001)

This Court should follow the reasoning in *Worthington* and *McGrath* and order full disclosure of Defendants' internal investigation and remedial measures.

## 2. **North Shore's Investigations and Remedial Actions Must Be Disclosed**

Defendants may be attempting to assert the *Faragher/Ellerth* defense that they took remedial action to prevent and correct promptly any harassing behavior in response to Geller's complaints of discrimination. However, as Debra Geller alleges, she continued to suffer retaliation by North Shore after complaining to Kim Greene, including, but not limited to changing the terms and conditions of her employment, reassigning her work location, and excluding her from work related projects with which she was previously assigned. *See* Ex 3- Geller Aff., ¶ 7. Defendants plead in their Answer as a defense to Plaintiffs' claims that "At all times, Defendants' actions towards Plaintiff Debra Geller were taken in good faith, for legitimate, non-discriminatory business reasons." *See* Ex 5- Answer, ¶ 73. In order to support this affirmative defense, Defendants must contend that it acted in a non-discriminatory fashion once Debra Geller put North Shore on notice of her discrimination allegations in July 2009. Hence, Defendants cannot

avoid asserting the *Faragher/Ellerth* defense because once Geller complained to North Shore's Corporate Compliance Department in July 2009, Defendants were obligated to investigate and ensure that no further discrimination or retaliation ensued. Whether Defendants carried out its responsibilities in responding to Debra Geller's complaints by conducting a thorough investigation and taking adequate remedial measures or whether Defendants failed to prevent further discrimination and retaliation hinges upon the information relating to Kim Greene's internal investigation and Mark Gloade's remedial recommendations. This Court cannot permit Defendants to continue to withhold discovery related to North Shore's Internal Investigation on the basis of privilege and at the same time allow Defendants to contend as a defense that the actions that Ms. Greene and Mr. Gloade took in response to Debra Geller's Complaints were appropriate, in good faith, and for "legitimate, non-discriminatory business reasons."

In addition, Plaintiffs seek punitive damages in this litigation. *See* Ex-4- Amended Complaint, p.11-12. Defendants assert as their sixth affirmative defense, that "Any claim for punitive damages is barred because Defendants did not engage in any conduct rising to the level required to sustain such awards." *See* Ex 5- Answer, ¶ 74. However, a failure to conduct an appropriate investigation and/or take remedial measures in response to Debra Geller's sexual harassment and retaliation complaints exposes Defendants to potential punitive damages since such actions are required by employers in order to comply with Title VII. Plaintiffs seek punitive damages in this matter because Defendants acted with willful or reckless indifference to the claimants' rights, and failed to make good faith efforts to comply with Title VII. *See 42 U.S.C. § 1981a(b)(1).* The terms "malice" or "reckless indifference" in the statute pertain to the employer's knowledge that it may be acting in violation of federal law. *Kolstad v. Am. Dental Assoc.*, 527 U.S. 526, 535 (1999). Plaintiffs contend that despite being put on notice of Debra

Geller's discrimination complaints, Defendants failed to promptly take remedial action and therefore, permitted further discrimination and retaliation to continue. Thus, full disclosure of North Shore's investigation and remedial actions in response to Debra Geller's discrimination complaint is required. *See Cioffi v. New York Cmty Bank,* No. 04-2527 (ADS), 2006 U.S. Dist. LEXIS 92037 at *19 (E.D.N.Y. 2006)(an employer may be subject to punitive damages if it fails to show that it made good faith efforts to comply with Title VII by *enforcing* an anti-discrimination policy.) In the alternative, if Defendants are not required to produce outstanding discovery relating to their internal investigation and remedial measures then they should be precluded from asserting the *Faragher/Ellerth* defense, from asserting any defense to Plaintiffs' punitive damages claims, and from relying on information in the possession of Greene and Gloade. Otherwise Defendants' use of documents and information without Plaintiffs' possession of the same will result in unfair surprise. *See Mallinckrodt Chemical Works v. Goldman, Sachs & Co.,* 58 F.R.D. 348, 353 (S.D.N.Y. 1973)(noting that the purpose of discovery is "to provide both parties with information essential to proper litigation on all the facts.")

Defendants may not use privilege as a basis for withholding properly demanded discovery relating to Defendants' remedial measures and investigation in response to Debra Geller's complaints of discrimination and thus, this Court should grant Plaintiffs' motion to compel.

## CONCLUSION

For all the foregoing reasons, Plaintiffs' respectfully request that the Court grant Plaintiffs' motions for an extension of discovery and compel, and order any further just relief.

Dated: July 22, 2011
     New York, NY

Respectfully submitted,

Ann Macadangdang, Esq.

25