UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------X
DEBRA GELLER and GREGG GELLER,

                        Plaintiff(s),        <u>MEMORANDUM
                                                        OPINION AND ORDER</u>

          -against-                              CV 10-170 (ADS) (ETB)

NORTH SHORE LONG ISLAND JEWISH HEALTH
SYSTEM and ANTHONY DIFILIPPI,

                        Defendant(s).
----------------------------------------------------------------------------X

      Before the court is the plaintiffs' motion to compel the production of certain documents pertaining to an internal investigation conducted by defendants and the depositions of two witnesses, as well as a request for an extension of discovery. Defendants oppose plaintiffs' motion to compel on the grounds of privilege and the request to extend discovery on the basis of unreasonable delay. For the following reasons, plaintiffs' motion is denied in its entirety.

FACTS

      Plaintiffs, Debra Geller and her husband, Gregg Geller, commenced this action on January 14, 2010, pursuant to Title VII, 42 U.S.C. § 2000e <u>et</u> <u>seq.</u>, and the New York Human Rights Law, N.Y. Executive Law § 296 <u>et</u> <u>seq.</u>, as well as New York common law. Plaintiffs allege that Debra Geller was sexually harassed and retaliated against by defendants, North Shore Long Island Jewish Health System ("LIJ") and her supervisor, Anthony DiFilippi ("DiFilippi"), during the course of her employment with LIJ. (Am. Compl. ¶¶ 1-3, 7, 17-28.) Plaintiff Gregg

Geller asserts a loss of consortium claim. (Am. Compl. ¶ 4, 30.)

Specifically, plaintiffs allege that, beginning in late 2005, Debra Geller was subjected to a severe and pervasive hostile work environment by DiFilippi, which resulted in her filing a complaint against DiFilippi on July 10, 2009 with LIJ's Human Resources Department. (Am. Compl. ¶¶ 17, 19.) On July 28, 2009, Debra Geller met with LIJ's Corporate Compliance Officer, Kim Greene ("Greene"), to discuss her complaint against DiFilippi. (Am. Compl. ¶ 23.) Greene thereafter conducted an internal investigation regarding Debra Geller's complaint against DiFilippi, which plaintiffs allege was inadequate. (Am. Compl. ¶ 25.)

The parties appeared before the undersigned for an initial scheduling conference on May 18, 2010, at which time a discovery schedule was adopted, which included a discovery deadline of November 30, 2010. By Order dated October 22, 2010, the discovery deadline was extended to March 30, 2011 and the parties were advised that this was the final "good cause" extension. (Order of Boyle, J. dated Oct. 22, 2010.) By letter dated March 11, 2011, plaintiffs advised the Court of an ongoing discovery dispute and requested a conference call with the Court to resolve the issue. (Letter from Serrins, A. to Boyle, J. dated Mar. 11, 2011.) Specifically, plaintiffs sought to compel the production of certain documents relating to the internal investigation conducted by Greene in response to Debra Geller's complaint against DiFilippi, as well as Greene's deposition. (Id.) Defendants refused to produce the documents on the grounds of privilege and, in a responsive letter, dated March 14, 2011, advised the Court that plaintiffs had refused to return certain privileged documents that had been inadvertently produced by defendants. (Letter from D'Angelo, E. to Boyle, J. dated Mar. 14, 2011.) Thereafter, on March 25, 2011, five days prior to the close of discovery, plaintiffs requested an additional discovery

extension as a result of the ongoing discovery dispute.  (Letter from Serrins, A. to Boyle, J. dated Mar. 25, 2010.)

The Court held a conference to address the issues raised by plaintiffs on April 8, 2011. At that conference, the Court denied plaintiffs' motion to compel the production of Greene's investigatory documents that defendants had withheld as privileged.  The Court further denied plaintiffs' request to extend discovery.

Plaintiffs thereafter appealed the undersigned's ruling to the district judge assigned to this action, Judge Spatt.  By Memorandum of Decision and Order dated June 18, 2011, Judge Spatt denied plaintiffs' objections without prejudice to renew and returned the action to the undersigned, requesting that the undersigned issue a further order addressing the basis for the denial of plaintiffs' motions.  (Mem. Of Decision and Order, Spatt, J., dated June 18, 2011 at 2.) The Court issued an Order on July 7, 2011 stating that it would consider plaintiffs' motions <u>de novo</u> because, unfortunately, there is no record of the proceedings that took place on April 8, 2011 and the parties are unable to agree as to what occurred during that conference.  (Order of Boyle J., dated July 7, 2011.)

Plaintiffs thereafter filed the within motion, which again requests the production of Greene's investigatory documents that defendants have withheld as privileged, as well as an order compelling the depositions of Greene and Mark Gloade, an LIJ human resources employee who is believed to have been the individual responsible for terminating DiFilippi, as well as an extension of discovery.  Defendants oppose plaintiffs' motion on the basis of privilege and unreasonable delay.

DISCUSSION

I.   Plaintiffs' Motion to Compel Discovery

Pursuant to Federal Rule of Civil Procedure 26(b)(1), discovery may be had of any matter, not privileged, that is relevant to the claim or defense of any party. See Fed. R. Civ. P. 26(b)(1). There is no dispute that the information requested by plaintiffs relating to the internal investigation conducted by Greene is relevant to plaintiffs' claims in this action. In fact, defendants have already produced the investigative documents created by Greene prior to its retention of counsel. Rather, the crux of the parties' dispute is whether that portion of the investigation conducted after counsel was retained is protected by the attorney-client and/or work product privileges.

By letter dated August 18, 2009, plaintiffs' attorney, Alan Serrins, advised the President and Chief Executive Officer of LIJ, Michael Dowling, of plaintiff Debra Geller's allegations of sexual harassment by defendant DiFilippi and threatened litigation unless LIJ chose to settle the matter within five days of receipt of the letter. (Klein Decl., Ex. B.) On August 19, 2009, as a result of plaintiffs' attorney's letter, defendants retained as counsel Epstein Becker & Green, P.C. (Klein Decl. ¶ 2.) By letter dated August 24, 2009, defendants' counsel informed plaintiffs' counsel of their retention and directed that any further communications be directed to counsel. (Klein Decl., Ex. R.) Accordingly, beginning on August 19, 2009, the internal investigation commenced by Greene in July 2009 was supervised by defense counsel. (Klein Decl. ¶ 2.)

Plaintiffs argue that because Greene conducted the internal investigation in her capacity as Corporate Compliance Officer and not as an attorney, the documents she created during the course of the investigation are not privileged. However, "[f]actual investigations conducted by

an agent of the attorney, such as 'gathering statements from employees, clearly fall within the attorney-client rubric.'" Gucci Am., Inc. v. Guess?, Inc., 271 F.R.D. 58, 71 (S.D.N.Y. 2010) (quotation omitted). "Thus, courts have frequently extended the attorney-client privilege to communications made to investigators who have provided necessary assistance to attorneys," as Greene did here. Id. (collecting cases). "As one commentator has noted, were an attorney required to exclude investigators from the circle of confidentiality in order to maintain the privilege, providing legal advice to clients would be difficult, if not impossible." Id. (citing Paul R. Rice, Attorney-Client Privilege in the United States § 3:3 (2d ed. 2010)) (additional citation omitted).

The Court finds that Greene acted as an agent of defense counsel during her investigation from August 19, 2009 forward. As such, her interviews of LIJ employees and any documents she created regarding those interviews are privileged. "[C]ommunications among non-attorneys in a corporation may be privileged if made at the direction of counsel, to gather information to aid counsel in providing legal services." Gucci Am., Inc., 271 F.R.D. at 72 (quotation omitted) (alteration in original).

Moreover, it is clear that the documents generated during Greene's internal investigation after August 18, 2009 are attorney work product since they were created "in anticipation of litigation," as threatened by plaintiffs' counsel's August 18, 2009 letter. Fed. R. Civ. P. 26(b)(3). The work product doctrine applies to "(1) a document or tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." Id. at 73-74 (citing cases). "'[F]actual material, including the result of a factual investigation,' falls within the ambit of the work product doctrine." Id. at 73 (citing In re Initial Pub. Offering

Sec. Litig., 249 F.R.D. 457, 459 (S.D.N.Y. 2008)).

Plaintiffs are correct that "business documents prepared in the ordinary course of business, or that otherwise would have been prepared absent the prospect of litigation, do not receive work product protection." Gucci Am., Inc., 271 F.R.D. at 74 (citing United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998)). That is why the investigative documents prepared by Greene prior to August 19, 2009 are not privileged. However, in contrast to the attorney-client privilege, the attorney work product doctrine "does not require that the documents be prepared at the behest of counsel, only that they be prepared 'because of the prospect of litigation.'" Gucci Am., Inc., 271 F.R.D. at 74 (citing Adlman, 134 F.3d at 1202). The ultimatum proffered in plaintiffs' counsel's August 18, 2009 letter - that unless LIJ contacted plaintiffs' counsel within five days of receipt of the letter to settle the matter, plaintiffs would "have no choice but to file the appropriate causes of action in the public forums available" - clearly threatened the "prospect of litigation." Accordingly, the internal investigation conducted by Greene thereafter was done in anticipation of litigation. See United States v. Nobles, 422 U.S. 225, 238-39 (noting that "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial," and as a result, "the [work product] doctrine protect[s] material prepared by agents for the attorneys as well as those prepared by the attorney for himself"); Costabile v. Westchester, New York, 254 F.R.D. 160, 164 (S.D.N.Y. 2008) (holding that the work product doctrine protects work performed by those "enlisted by legal counsel to perform investigative or analytical tasks to aid counsel in preparation for litigation"). The fact that the investigative documents were prepared by the client and not counsel do not strip them of their privilege. See Gucci Am., Inc., 271 F.R.D. at 74

(noting that the work product doctrine has been "extended . . . to work product produced by a client at the direction of counsel in anticipation of litigation").

"Whether or not there were two completely separate investigations" - the one conducted by Greene on her own prior to retention of counsel on August 19, 2009 and the one conducted at counsel's direction beginning on August 19, 2009 - "at some point, the purpose and focus of the investigation had to have shifted from an internal investigation in response to [plaintiffs'] claims to an investigation for the purpose of mounting a legal defense against any such claims." Prince v. Madison Square Garden, L.P., 240 F.R.D. 126, 128 (S.D.N.Y. 2007) (citing cases). Once that shift in the investigation occurred - after August 18, 2009, upon the retention of counsel - the documents generated during the investigation became privileged. See Welland v. Trainer, No. 00 Civ. 0738, 2001 WL 1154666, at *2 (S.D.N.Y. Oct. 1, 2001) (concluding that documents produced during an internal investigation prior to plaintiff's termination were not attorney work product but that once plaintiff was terminated, the "investigation focus changed" and "the investigation continued because of the need to prepare for the likelihood of litigation").

The Court notes that plaintiffs cite to a number of cases in support of their motion to compel in which defendants' claim of privilege with respect to internal investigative documents was denied. However, each of the cases plaintiffs cite involves circumstances by which defendants placed their investigation at issue and were attempting to use privilege as both a sword and a shield. See, e.g., McGrath v. Nassau Health Care Corp., 204 F.R.D. 240 (E.D.N.Y. 2001); Worthington v. Endee, 177 F.R.D. 113 (N.D.N.Y. 1998). That is not the case here as defendants' counsel has affirmatively represented to the Court that defendants have no intention of "using the investigation to avoid liability." (Klein Decl. ¶ 7.) Accordingly, the cases cited by

plaintiffs are inapposite to the facts here. Accordingly, plaintiffs' motion to compel the production of the investigative documents created by Greene after August 18, 2009 is denied on the grounds that such documents are privileged.[1]

Moreover, the parties have been on notice since January 2010 that "[a]ny request for court intervention relating to discovery must be filed at least thirty (30) days prior to discovery completion." (Order of Boyle, J., dated Jan. 25, 2010, ¶ 3.) Despite this order, plaintiffs chose not to seek court intervention concerning the privilege dispute until March 11, 2011, nineteen days before the close of discovery. Accordingly, plaintiffs' motion to compel is also denied as untimely.

II.     Plaintiffs' Request for an Extension of Discovery

Plaintiffs also request an extension of discovery, which ended on March 30, 2011, in order to conduct the depositions of Gloade and Greene. By Order dated October 22, 2010, which granted a joint request to extend the discovery deadline beyond November 30, 2010, the parties were advised that it was the final "good cause" extension. (Order of Boyle, J., dated Oct. 22, 2010.) Yet, five days prior to the close of discovery, plaintiffs again sought to have the deadline extended for the reasons contained in the within motion. Specifically, plaintiffs assert that

---

[1] There is also an issue raised by defendants in their papers concerning the inadvertent disclosure of privileged documents to plaintiffs during discovery and plaintiffs' failure to return those documents despite being requested to do so. While the Court finds this information troubling, defendants have not made a cross-motion to compel the return of the documents, despite being afforded permission to do so. (Order of Boyle, J., dated July 7, 2011 (stating that any motion or cross-motion shall be filed by July 22, 2011)). Accordingly, the Court declines to address this issue, except to note the codified protocol set forth in Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure, which appears to address the situation here where privileged documents are produced in error.

despite timely noticing the depositions of Gloade and Greene, defendants failed to confirm dates for either deposition and that by failing to produce the requested privileged documents, defendants effectively precluded plaintiffs from conducting those depositions.

However, the evidence submitted by both parties in connection with the within motion demonstrates that plaintiffs simply chose not to conduct the depositions of Gloade and Greene without the requested investigative documents, which plaintiffs knew were the subject of a privilege dispute between the parties. Plaintiffs noticed Greene's deposition on July 16, 2010, to be conducted on August 25, and August 26, 2010. (Macadangdang Decl., Ex. 17.) On February 28, 2011, plaintiffs noticed Gloade's deposition, to be conducted on March 28, 2011. (Macadangdang Decl., Ex. 18.) The privilege dispute began in July 2010, when defendants served their responses to plaintiffs' discovery requests and their privilege log. (Klein Decl., Exs. D-E.) It became further exacerbated in August 2010 when defendants inadvertently produced privileged documents that plaintiffs refused to return, despite Federal Rule of Civil Procedure 26(b)(5)(B), which specifically requires the return or destruction of such documents. (Klein Decl., Exs. G-H.) By letter dated September 14, 2010, defendants' counsel, Erin Carney D'Angelo, advised plaintiffs' counsel, Ann Macadangdang, that defendants considered all of the internal investigation documents created subsequent to August 18, 2009 to be privileged. Ms. D'Angelo offered a compromise to resolve the issue rather than resorting to motion practice and suggested that the privilege dispute be resolved prior to Greene's deposition. (Klein Decl., Ex. I.) Plaintiffs rejected defendants' discovery compromise by letter dated September 16, 2010 but made no mention of Greene's deposition. (Klein Decl., Ex. J.)

There does not appear to be any further correspondence between the parties regarding the

privilege dispute or the depositions of Greene and Gloade - or at least none that has been submitted to the Court - until February 2011. (Klein Decl., Ex. K.) It appears that plaintiffs again noticed Greene's deposition at that time, in addition to noticing Gloade's deposition. (Klein Decl., Ex. L.)[2] When an agreement could not be reached between the parties concerning the disputed documents, plaintiffs, on March 11, 2011, filed a pre-motion conference request with the Court concerning the instant motion to compel. (Klein Decl., Ex. M.)

There is nothing before the Court that demonstrates in any way that defendants precluded plaintiffs from conducting Greene and Gloade's depositions. Rather, plaintiffs simply chose not to conduct those depositions without the requested investigative documents that they knew were the subject of a claim of privilege. Notwithstanding this knowledge, it appears that plaintiffs' counsel did nothing to attempt to resolve the parties' privilege dispute for a period of six months, from September 2010 to March 2011, when, on the eve of the close of discovery, plaintiffs sought leave to move to compel the production of the disputed documents and requested a further extension of discovery. Such unreasonable delay on plaintiffs' part warrants a denial of the request to extend discovery.

Moreover, plaintiffs have failed to demonstrate good cause for a discovery extension, even if such an extension were available to them, which it is not because plaintiffs were advised when discovery was extended in November 2010 that it was the final good cause extension. In order to obtain an additional extension of discovery, plaintiffs would need to demonstrate manifest injustice, (Order of Boyle, J., dated Jan. 25, 2010, ¶ 4), which they have failed to do

---

[2] A February 25, 2011 email from plaintiffs' counsel to defendants' counsel states "please find the attached notice of depositions." (Klein Decl., Ex. L.) However, the attachments were not submitted to the Court for review.

since it was their own decision not to proceed with Greene and Gloade's depositions.

Finally, the Order of the Court dated January 25, 2010, directed that "[a]ny request for court intervention relating to discovery must be filed at least thirty (30) days prior to discovery completion." (Order of Boyle, J., dated Jan. 25, 2010, ¶ 3.) Plaintiffs filed their request to extend discovery on March 25, 2011, five days prior to the close of discovery. Plaintiffs' failure to comply with the Court's scheduling order also warrants a denial of their request to extend discovery. See Fed. R. Civ. P. 16(f)(1) (providing that the court "may issue any just orders . . . if a party or its attorney . . . (C) fails to obey a scheduling order").

Accordingly, plaintiffs' request for an extension of discovery is denied. Discovery is certified as complete and this action is trial ready, subject to the filing of a joint pretrial order, consistent with Judge Spatt's individual rules, which shall be filed no later than December 8, 2011. As previously ordered, the final conference is rescheduled to December 9, 2011 at 11:00 a.m., by telephone.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to compel is denied.

**SO ORDERED:**

Dated: Central Islip, New York
November 9, 2011

/s/ E. Thomas Boyle
E. THOMAS BOYLE
United States Magistrate Judge